<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KERRIE S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 24-08574 (GC) <br><br> <u>**OPINION**</u> |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon Plaintiff Kerrie S.'s[1] appeal from the final decision of the Commissioner of the Social Security Administration (Commissioner)[2] denying Plaintiff's application for Social Security Disability (SSD) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* After careful consideration of the entire record, including the entire Administrative Record, the Court decides this matter without oral argument in accordance with Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's final decision.

---

[1] Plaintiff is identified by first name and last initial. *See* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano became Commissioner of the Social Security Administration on May 7, 2025. This change has no bearing on the instant matter. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

I.   **BACKGROUND**

   A.   **Procedural History**

Plaintiff has a high school education and worked as a kennel attendant and kennel manager. (AR 34.)[3] In July and August of 2020, Plaintiff filed applications for SSD and SSI, alleging that she became disabled as of May 1, 2016. (*Id.* at 288-308.) Plaintiff alleged that she could not work because of a range of health conditions including bursitis, degenerative arthritis, carpel tunnel syndrome, diabetes, hypertension, ulcerative colitis, gastritis, and a broken hip. (*Id.* at 117, 302.) The applications were denied on February 12, 2021. (*Id.* at 108-123, 174.) Upon reconsideration, Plaintiff's claims were denied again on May 12, 2021. (*Id.* at 184, 188.) On May 26, 2021, Plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ). (*Id.* at 190-191.) That hearing took place on December 1, 2021. (*Id.* at 76-106.)

On January 10, 2022, the ALJ issued Plaintiff an unfavorable decision, finding Plaintiff not disabled. (*Id.* at 143-155.) Plaintiff requested a review of the ALJ's decision before the Appeals Council, and on January 31, 2023, the Appeals Council vacated the decision and remanded the case to the ALJ. (*Id.* at 161-164.) The Appeals Council found that the ALJ failed to properly evaluate medical opinion evidence. (*Id.* at 163.)

Following remand, on August 15, 2023, the ALJ conducted a second hearing. (*Id.* at 43-70.) On October 30, 2023, the ALJ issued a second unfavorable decision. (*Id.* at 15-42.) The ALJ concluded that even though Plaintiff could not perform past relevant work, she retained the ability to perform "other work that exists in significant numbers in the national economy." (*Id.* at

---

[3]   "AR" refers to the Administrative Record, available at ECF No. 5. This Opinion cites the internal page numbers when referring to the Administrative Record. Page numbers for all other docket citations refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

2

35.) Therefore, the ALJ found that Plaintiff was "not disabled under sections 216(i) and 223(d) of the Social Security Act." (*Id.* at 36.)

Subsequently, Plaintiff requested a review of the ALJ's decision before the Appeals Council. (*Id.* at 1.) The Appeals Council denied that request on July 2, 2024. (*Id.* at 1-4.) Thus, the ALJ's decision became the Commissioner's final decision. (*Id.*)

On August 20, 2024, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff raises two arguments. First, Plaintiff contends that the "ALJ's determination that Plaintiff's ulcerative colitis and gastritis were non-severe impairments was not supported by substantial evidence." (ECF No. 9 at 12.) Second, Plaintiff argues that the "ALJ erred in evaluating Plaintiff's subjective complaints." (*Id.* at 16.)

**B.     The ALJ's Decision**

The ALJ used the requisite five-step sequential evaluation process to determine that Plaintiff is not disabled. (AR 19-20.) *See also* 20 C.F.R. § 416.920(a)(4) (describing the five-step process).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024, and "has not engaged in substantial gainful activity since May 1, 2016, the alleged onset date." (AR 20.)[4]

At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease (DDD) of the lumbar spine with radiculopathy;[] degenerative joint

---

[4]     "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 416.972. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [the claimant] worked before." *Id.* § 416.972(a). "Gainful work activity is work activity that [a claimant] do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(b).

3

disease (DJD)/osteoarthritis (OA) of the hips and status-post right hip fracture; carpal tunnel syndrome (CTS); fibromyalgia (FM); depressive disorder; anxiety disorder; unspecified obsessive-compulsive disorder (OCD); and obesity." (*Id.* at 21.) The ALJ noted that these medically determinable impairments "significantly limit the ability to perform basic work activities" and thus are severe. (*Id.*) The ALJ found that Plaintiff's other impairments, including "bilateral knee DJD/OA, diabetes, hypertension, hyperlipidemia, gastritis, history of thyroid gland disorder, and history of ulcerative colitis," were not severe. (*Id.*) The ALJ noted that he "considered all of the claimant's [medically determinable impairments], including those that are not severe, when assessing her residual functional capacity later in [the ALJ's] decision." (*Id.*)

At step three, the ALJ found that none of Plaintiff's impairments nor any combination of impairments met or medically equaled the severity of any of the impairments listed in the applicable regulation. (*Id.*) *See also* 20 C.F.R. § 416.925(a) (regulation pointing ALJs to "appendix 1 of subpart P of part 404 of this chapter").

At step four, the ALJ conducted a residual functional capacity (RFC) assessment to determine whether Plaintiff could perform the requirements of her past relevant work.[5] (AR 25- 34.) The ALJ concluded that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; frequently balance and occasionally kneel, stoop and crouch, but never crawl; perform frequent fingering and handling; occasionally have exposure to extremes in environmental conditions, but never be exposed to unprotected heights or hazardous machinery; must have proximate access to restroom facilities; have occasional contact with supervisors, co-workers and the public; and she is able to do only simple and routine tasks.

---

[5]    Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a).

4

(*Id.* at 25.) To arrive at this conclusion, the ALJ stated that he "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* (citing 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling (SSR) 16-3p (Evaluation of Symptoms in Disability Claims), 2017 WL 5180304 (Oct. 25, 2017)).)  The ALJ also considered "the medical opinions and prior administrative medical findings." (*Id.* at 33.)

In considering Plaintiff's symptoms, the ALJ stated that he must follow a two-step process. First, the ALJ must determine whether "there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (*Id.* at 25.) Second, if there is such an impairment, the ALJ would then evaluate "the intensity, persistence, and limiting effects" of the symptoms "to determine the extent to which they limit the claimant's work-related activities." (*Id.*) In making this evaluation, if Plaintiff's statements about intensity, persistence, and limiting effects "are not substantiated by objective medical evidence," the ALJ stated he must consider "other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (*Id.*)

Applying these standards, the ALJ reviewed Plaintiff's testimony and medical history to find step one satisfied. (*Id.* at 25-26.) The ALJ then proceeded to step two and found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 26.)

The ALJ then discussed the role that medical opinions played in his RFC assessment. (*Id.* at 33-34.) The ALJ found the opinion of Dr. Eric Gordon (Plaintiff's treating psychiatrist) to have "limited persuasive value." (*Id.* at 33.) The ALJ found the State agency consultant's opinions and prior administrative medical findings "partially persuasive." (*Id.*)

5

The ALJ based his RFC assessment on the above considerations and concluded that Plaintiff was "unable to perform any past relevant work." (*Id.* at 34.) The ALJ stated that "the residual functional capacity precludes performance" of her prior jobs as kennel attendant and kennel manager because those jobs required "superior exertional and skill requirements." (*Id.*)

Finally, at step five, the ALJ considered whether jobs exist in the national economy that Plaintiff could perform given her age, education, work experience, and RFC results. (*Id.* at 34-35.) Based on hypothetical questions posed by the ALJ, a vocational expert testified that Plaintiff could perform jobs such as "office helper," "bench assembler," and "photocopy-machine operator." (*Id.* at 35.) The ALJ determined that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. (*Id.*) Therefore, the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*) As a result, the ALJ concluded that Plaintiff was not disabled for SSD and SSI purposes. (*Id.*)

## II.    LEGAL STANDARD

### A.    Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[6] In conducting this review, the Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted). Instead, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and "supported by substantial evidence." *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citation omitted).

---

[6]    The standard of judicial review is the same for SSD as it is for SSI. *See Johnson v. Comm'r of Soc. Sec.*, 398 F. App'x 727, 729 n.1 (3d Cir. 2010) ("The evaluation of the disability itself . . . is the same under [the Supplemental Security Income and Social Security Disability Insurance] program[s]. . . . Likewise, the standard of review is the same.").

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., [evidence] offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Legal issues, in contrast, are subject to a plenary or de novo review. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner . . . .") (quoting *Chandler*, 667 F.3d at 359).

**B.  Determining Disability**

To be eligible for SSI and SSD benefits under the Social Security Act, a claimant must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where the individual lives or in several regions of the country. 42 U.S.C. § 1382c(a)(3)(B); *Plummer*, 186 F.3d at 427-28. A physical or mental impairment is one that

7

"results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Disability determinations are made individually "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citation omitted).

### C. Sequential Evaluation

The Social Security Administration has developed a sequential, five-step process for evaluating disability claims. The process considers whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). "The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled." *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 534 (3d Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the ultimate burden of proof at the first four steps, at which point the burden shifts to the Commissioner at the fifth step. *See Hess*, 931 F.3d at 201 ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security.") (citation omitted).

### III. DISCUSSION

Plaintiff makes two arguments in support of her appeal. First, she argues the ALJ's determination that Plaintiff's ulcerative colitis and gastritis were non-severe impairments was not supported by substantial evidence. (ECF No. 9 at 12-16.) Second, she argues that the ALJ improperly evaluated her subjective complaints. (*Id.* at 16-21.) On review of the ALJ's decision

(*see* AR 18-36) and the Administrative Record (*see generally* ECF No. 5), the Court finds good cause to affirm the Commissioner's decision.

### A. The ALJ's Evaluation of Plaintiff's Impairments

Plaintiff argues the ALJ's finding—that her ulcerative colitis and gastritis were non-severe impairments—was not supported by substantial evidence, and that this error was harmful because it "permeated the rest of the ALJ's decision." (ECF No. 9 at 12-16.) The Commissioner argues that the findings were supported by substantial evidence, and even if they were not, any error was harmless because the ALJ found other severe impairments at step two and incorporated the non-severe gastrointestinal impairments into the RFC. (EFC No. 11 at 15-21.) The Court agrees with the Commissioner that the ALJ's findings were supported by substantial evidence and that even if the ALJ erred, any such error was harmless.

An impairment is severe when it "significantly limits [a plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). To show an impairment is severe, the plaintiff has the burden to demonstrate it "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); *see also Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144 (3d Cir. 2007). Basic work activities include physical "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1522(b). And when conducting the step two analysis, the ALJ still need only comply with the "substantial evidence" standard, meaning that so long as his finding is based on "more than a mere scintilla" of evidence, it must be upheld even if the Court would have found the impairments severe. *See Hagans*, 694 F.3d at 292 (internal quotation marks and citation omitted).

Here, the ALJ reasoned that Plaintiff's gastritis was not severe because Plaintiff had been managing it with medication "with no noted complications or resulting work-related limitations." (AR 21 (citing AR 606 (January 2021 medical report)).)[7] And he reasoned that Plaintiff's ulcerative colitis was not severe because it was in remission. (*Id.* (citing AR 1784 (noting normal colonoscopy in August 2019); AR 556 (ulcerative colitis in remission in 2020), AR 1775 (remission in November 2021)).) The ALJ also relied on Plaintiff's testimony at the August 15, 2023 hearing. (*Id.*) At that hearing, Plaintiff stated her ulcerative colitis was still in remission. (*Id.* at 53.) Despite it being in remission, Plaintiff testified that ulcerative colitis was still "something that gives you the urgency" to go to the restroom. (*Id.*) Plaintiff stated that she uses the restroom "five or six" times a morning for five to ten minutes each time. (*Id*. at 54-55.) When asked how often Plaintiff has bathroom accidents, even while in remission, Plaintiff stated "[n]ot very often" because she "stay[s] close to the bathroom." (*Id.* at 54.) Plaintiff has had two such accidents within the six months preceding the hearing. (*Id.*)

Based on the above, the Court is satisfied that the ALJ's finding—that Plaintiff's gastrointestinal impairments were not severe—was supported by substantial evidence. Courts have affirmed ALJs' decisions that physical impairments—gastrointestinal or otherwise—were not severe when the ALJ relied on evidence that those impairments were under control. *See Salles,* 229 F. App'x at 145 ("The fact that [plaintiff's] gall bladder disease, Hepatitis, and headaches from eye strain evidently were either not treated at all or were controlled by medication supports the ALJ's findings that these impairments were not severe"); *Nancy D. v. Kijakazi*, Civ. No. 22-05084, 2023 WL 6387868, at *6-7 (D.N.J. Sept. 29, 2023) (affirming finding of non-severe impairment

---

[7]     At the August 15, 2023 hearing on which the ALJ relies, Plaintiff indicates that she takes medication for gastritis every day and that the focus of her gastrointestinal problems is the ulcerative colitis. (*See* AR 53-54.)

10

when ALJ reasoned "that [p]laintiff suffers from irritable bowel syndrome [IBS], but that her symptoms are controlled"); *Weitzel v. Saul*, Civ. No. 18-02283, 2020 WL 281534, at *5-6, *8 (M.D. Pa. Jan. 17, 2020) (affirming ALJ's decision that plaintiff's IBS was non-severe when "IBS treatment was successful" even if plaintiff still had to use the restroom every sixty to ninety minutes for up to thirty minutes at a time). So too here.[8]

Even if the ALJ's findings were not supported by substantial evidence, any error would be harmless. Courts in this circuit have repeatedly found remand unwarranted when an ALJ determined some impairments were non-severe but proceeded with the five-step analysis because other impairments, even if unrelated, were severe. *See Orr v. Comm'r Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter the remainder of the five-step process, much less the overall outcome. And without more, [the plaintiff] provides no valid basis for remand."); *Salles*, 229 F. App'x at 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."); *Ingandela v. Kijakazi*, Civ. No. 20-08033, 2022 WL 154422, at *10-11 (D.N.J. Jan. 18, 2022) ("[E]ven if the ALJ erred in concluding that [p]laintiff's obesity, sleep apnea, gastritis, gastroenteritis, and colitis did not constitute severe impairments, any such error is harmless

---

[8] Plaintiff raises an additional argument: the ALJ did not account for the period between 2016 and 2017 (Plaintiff concedes the evidence demonstrates she was in remission after that point), so at a minimum the ALJ erred in finding her disability non-severe during this interval. (ECF No. 12 at 3.) However, at the initial hearing in 2021—on which the ALJ relies (AR 26)—Plaintiff stated her ulcerative colitis was in remission, and when the ALJ asked how long it had been in remission for or when it was last "active," Plaintiff responded: "The last time I had to go to the hospital was probably about six years ago." (*Id.* at 90.) This is sufficient to demonstrate that the ALJ's non-severe finding during the 2016 to 2017 period was supported by substantial evidence. *Cf. Ingandela v. Kijakazi*, Civ. No. 20-08033, 2022 WL 154422, at *11 (D.N.J. Jan. 18, 2022) ("Plaintiff points to no evidence to show that her gastrointestinal issues . . . continued for twelve consecutive months.") And even if it were not, any error is harmless as explained in this Opinion.

11

because the ALJ concluded that [p]laintiff's bipolar disorder, anxiety disorder, ADHD, asthma, and [DDD] were severe impairments."); *Robin C. v. Comm'r of Soc. Sec.*, Civ. No. 20-6778, 2021 WL 6135910, at *6-7 (D.N.J. Dec. 29, 2021) ("Here, the ALJ concluded that several of [p]laintiff's mental impairments . . . met the requisite severity threshold . . . .Therefore, the ALJ's Step Two finding that [p]laintiff's physical impairments[, including bowel obstruction], were non-severe does not warrant remand.").

Here, the ALJ found Plaintiff had a range of severe impairments—both physical and mental—and then proceeded to step three of the analysis. (AR 21.) Therefore, any error was harmless, and remand is not warranted.[9]

**B.      The ALJ's Evaluation of Plaintiff's Testimony**

Plaintiff argues the ALJ failed to follow the two-step framework outlined in 20 C.F.R. § 416.929 and SSR 16-3p when evaluating Plaintiff's subjective complaints. (ECF No. 9 at 16-21.) The Commissioner argues the ALJ properly followed the framework and that Plaintiff's

---

[9]     To the extent Plaintiff argues this Court should divert from others and find harmful error, the Court will not do so. Plaintiff argues that "there is no demonstration anywhere after Step Two that the ALJ further considered Plaintiff's gastrointestinal evidence." (ECF No. 9 at 16.) Plaintiff contends that this lack of consideration is grounds for remand because the RFC was therefore improper. (*Id.* at 15-16 (citing *Fleck v. Kijakazi*, Civ. No. 21-75, 2022 WL 1203845, at *4 (W.D. Pa. Apr. 22, 2022) ("The RFC is only a true reflection of a claimant's maximum sustained work ability if all of his or her impairments are accounted for.") (internal citation omitted)).) However, the ALJ *did* account for Plaintiff's gastrointestinal impairments in formulating the RFC. (*See* AR 20 ("I must consider all of the claimant's impairments, including impairments that are not severe [when making an RFC determination.]"); *id.* at 25 (finding that Plaintiff "must have proximate access to restroom facilities").) *See also Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008) (noting that where the ALJ "explicitly indicated a number of times that he was considering the [severe and non-severe] impairments in combination . . . we see no reason to not believe him"); *Nancy D. v. Kijakazi*, Civ. No. 22-05084, 2023 WL 6387868, at *7 (D.N.J. Sept. 29, 2023) (affirming when ALJ incorporated non-severe IBS impairment into RFC). On reply, Plaintiff argues the access-to-restrooms portion of the RFC is a "meager allowance" and not a "meaningful accommodation," (ECF No. 12 at 2-3), but she provides no caselaw or other evidence to support this claim, and the Court finds it unpersuasive.

argument boils down to a request for this Court to reweigh the evidence. (ECF No. 11 at 21-23.) The Court agrees with the Commissioner.

When "an individual alleges impairment-related symptoms," ALJs "must evaluate those symptoms using a two-step process." SSR 16-3p, 2017 WL 5180304, at *2. First, ALJ's "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *3. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [ALJs must] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*

When evaluating the intensity and persistence of the symptoms, the ALJ must "consider all of the evidence in an individual's record." *Id.* at *2. An ALJ must "not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled." *Id.* at *5. If an ALJ "cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then [the ALJ must] carefully consider other evidence in the record" including "statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms." *Id.* at *6; *see also* 20 C.F.R. §§ 404.1513, 416.913 (listing types of evidence); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (explaining how ALJs must evaluate subjective complaints of pain).

Here, the ALJ stated that he applied these standards. (AR 25.) The ALJ reviewed Plaintiff's Disability Report, Function Report, and testimony at two hearings to find step one satisfied because Plaintiff's medically determinable impairments, *see supra* Section I.B, could be

13

reasonably expected to cause Plaintiff's alleged symptoms. (*Id.* at 25-26.) The ALJ then proceeded to step two and found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" because the record "does not support a finding of disabling limitations." (*Id.* at 27.) Plaintiff argues that, at this second step, the "ALJ was required to evaluate factors such as the claimant's daily activities, the frequency and intensity of pain, the type, dosage, effectiveness, and side effects of medication, and other treatment that relieves pain" but "failed to do so." (ECF No. 9 at 18-19.) Had the ALJ followed this course, Plaintiff argues, he would have found that Plaintiff was only capable of "sedentary" rather than "light" work. (ECF No. 9 at 20.)[10]

As the ALJ's decision shows, however, Plaintiff's characterization is inaccurate. The ALJ thoroughly reviewed and cited to the record, relied on the requisite considerations, and supported his conclusions with substantial evidence. (*See* AR 27-32.) To make his step two finding, the ALJ relied heavily on objective medical evidence. For example, the ALJ relied on a January 2018 electromyography exam and nerve conduction study by Dr. Manish Viradia which revealed Plaintiff's tingling of limbs was "normal" (*id.* at 27 (citing AR 860-863); a January 2018 medical examination by Dr. Dipak Pandya which revealed that Plaintiff "was in no acute distress" and that her "sensory and motor" results were "normal" (*id.* (citing AR 871)); an August 2019 physical exam by Dr. Claudia Barghash which revealed Plaintiff's "mood and affect showed no evidence of depression, anxiety or agitation" (*id.* at 30 (citing 1160-1162)); a January 2021 medical

---

[10] Plaintiff argues this finding would have been determinative because "in the 'closely approaching advanced age' category, Plaintiff would have been found disabled" if she "could not perform more than sedentary work." (ECF No. 9 at 21 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, tbl. 1 rule 201.14).)

examination by Dr. Alexander Hoffman which revealed "no pulmonary or cardiac abnormalities, no edema of the lower extremities, and normal dorsiflexion and plantar flexion of the toes" (*id.* at 28 (citing AR 606-607)); a November 2021 musculoskeletal exam by Dr. Michelle Hoang which revealed "no tenderness or deformity with normal [range of motion] generally" (*id.* (citing AR 1778-1781)); and March 2023 pulmonary and electrocardiogram exams by Dr. Matthew Schaikewitz which respectively revealed "no respiratory distress" and "normal sinus rhythm" (*id.* at 30 (citing AR 1232-1235).)

And, as the ALJ was required to do, he relied on additional information apart from objective medical evidence. The ALJ's opinion is replete of these considerations, and they substantially support his findings. For example, the ALJ relied on what Plaintiff herself reported during many of her medical appointments and at her hearings,[11] and the treatment plans used to manage her symptoms.[12] (*See, e.g.*, *id.* at 27 ("[O]n October 22, 2020, [a computed tomography] scan . . . demonstrated intact surgical hardware without any definitive soft tissue abnormalities . . . ." (citing AR 1082-1083)); *id.* at 31 ("[O]n November 12, 2021, the claimant stated her mood has been stable, anxiety has been manageable, [and] she was sleeping well . . . ." (citing AR 1556)); *id.* at 28 ("[O]n November 16, 2021, the claimant indicated she was in her 'usual state of health with no acute subjective complaints.'" (citing AR 1778)); *id.* ("[O]n April 13, 2022, the claimant reported getting a few months of relief from [a] bursa injection . . . ." (citing AR 1848)); *id.* at 28-29 ("[O]n March 22, 2023, the claimant reported that she stopped smoking and gained weight afterwards,

---

[11]     "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (*including you*) about any issue in your claim." 20 C.F.R. §§ 404.1513, 416.913 (emphasis added).

[12]     "Factors relevant to your symptoms, such as pain, which we will consider include . . . [t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

but she denied any chest pain or shortness of breath . . . and noted [she was] feeling well." (citing AR 1232, 1236)); *id.* at 31 ("[O]n July 15, 2022, the claim report[ed] having more 'good days' than 'bad days' with mood and OCD symptoms had decreased" after increasing aripiprazole dosage (citing AR 1571)); *id.* at 32 ("[O]n September 16, 2022, the claimant reported her mood as stable, anxiety fluctuates, OCD is manageable, and she was sleeping well . . . ." (citing AR 1574)); *id.* at 26 ("[O]n August 15, 2023 . . . [Plaintiff] reported . . . that [her ulcerative colitis] is in remission." (citing AR 53)).) And the ALJ factored in Plaintiff's "daily activities," 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i), noting that Plaintiff "maintained independence in [activities of daily living], including personal care needs, preparing simple meals, driving, shopping, and volunteering in the community" and was "capable of managing her own funds." (AR 32 (citing AR 614, 1556-1583).)

At bottom, the ALJ properly evaluated Plaintiff's subjective complaints, and his findings were supported by substantial evidence in the record. The fact that Plaintiff introduces some evidence from which one could reach a different conclusion does not change the outcome. (*See* ECF No. 9 at 17-18). It is well-established that under the substantial evidence standard, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision[.]" *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009); *see also Parsons v. Barnhart*, 101 F. App'x 868, 869 (3d Cir. 2004) ("Inherent to [the] deferential [substantial evidence] standard of review is the rule that even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is also supported by the evidence."). Under this standard, therefore, remand in this case would be improper.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, the Commissioner's final decision is **AFFIRMED**. An appropriate Order follows.

Dated: November 26, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE